## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No.:   06-125 (RBW)** |
| | : | **(Hearing Before Magistrate Facciola)** |
| **v.** | : | |
| | : | |
| **CHARLES JUDES DORIUS,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VAVA PIERE,** | : | |
| **also known as Commandant,** | : | |
| | : | |
| **Defendants.** | : | |

### UNITED STATES MEMORANDUM AND
### PROFFER IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this Memorandum and Proffer in Support of Pre-Trial Detention, and states as follows:

A. <u>INTRODUCTION</u>

On May 12, 2006, the grand jury returned an indictment charging the defendants with two counts of violating 18 U.S.C. § 1203, Conspiracy to Commit Hostage Taking and Hostage Taking, in connection with the defendants' conspiracy to abduct and hold for ransom a ten-year old American girl on or about March 24, 2006, and the actual abduction of the girl on that date, in the Republic of Haiti, within the extraterritorial   jurisdiction of the United States, and, pursuant to 18 U.S.C. § 3238, within the venue of the United States District Court for the District of Columbia.

The United States seeks to have the defendants held without bond pursuant to the Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141-3150. The United States's Motion is based on Section 3142(f)(1)(A), and Section 3142(f)(2)(A) because two of the statutory conditions to hold a person(s) without bond exist in this case: the defendants committed a crime of violence and the defendants pose a serious risk of flight. Under 18 U.S.C. § 3156(a)(4), a "crime of violence" is defined as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another" or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Clearly, the offense here under 18 U.S.C. § 1203, Hostage Taking, is a crime of violence. In addition, the defendants have no known ties to the District of Columbia, and nor ties to other states, while they have strong ties to their native land.

Based upon the discussion below, the United States respectfully submits that there is no condition or combination of conditions which "will reasonably assure the appearance of the [defendants] as required and the safety of any other person and the    community." Accordingly, the defendants should be detained without bail pending trial  pursuant to 18 U.S.C. § 3142(e)-(f).

As a preliminary matter, and as this Court is well aware, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. §3142(f). The United States and the defendant may proceed by way of "proffer or otherwise," id., and hearsay is permitted. E.g.,

United States v. Winsor, 785 F.2d 755, 756 (9th Cir. 1986). Moreover, at a detention hearing, the United States is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986). "The defendant may not use a pretrial detention hearing as a trial on the underlying indictment or as a method for getting discovery from potential witnesses . . . . Nor may the defendant require the government to divulge its confidential sources in such a proceeding." United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992) (Sporkin, J.). If there is any examination, federal courts have limited that examination to the disputed issues, since the detention hearing should neither be turned into a mini-trial nor used as a subterfuge to obtain discovery. See, e.g., United States v. Suppa, 799 F.2d 115, 120 (3rd Cir. 1986). Finally, without a defense proffer that the United States's information is incorrect, the defendant is not permitted to challenge the government's evidence. United States v. Winsor, supra, 785 F.2d at 757.

In determining whether to detain the defendant, the Court shall consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the defendant; and (3) the defendant's character, physical and mental condition, family ties, employment history, past conduct, and criminal history. 18 U.S.C. § 3142(g). The burden of proof on the United States on the issue of flight is the "preponderance of the evidence." United States v. Vortis, 785 F.2d 327, 328-329 (D.C. Cir.), cert. denied, 479 U.S. 841 (1986). As set forth in Vortis, the law of this Circuit is clear and unambiguous on this point:

Although appellant argues that the government should be required to establish risk of flight by clear and convincing evidence, we hold that the magistrate correctly applied the preponderance of the evidence standard.  We reach this conclusion for several reasons.  First, although the statute explicitly states that a finding that a person should be detained pretrial as a danger to the community must be supported by 'clear and convincing evidence,'  18 U.S.C. § 3142(f), it is silent on the burden of proof needed for a finding that a person poses a risk of flight.  By contrast, in the context of bail pending appeal, the statute provides for detention unless the court finds, by clear and convincing evidence, that the person is not likely to flee or pose a danger to the community.  18 U.S.C. § 3143(b).  The statutory structure therefore suggests that Congress intended a different burden of proof for pretrial detention because of risk of flight than for danger to the community.  The standard of proof applicable to other kinds of pretrial proceedings is the preponderance of the evidence and we find that to be the appropriate burden for establishing risk of flight.  <u>Id</u>.

B.    <u>NO CONDITION OR COMBINATION OF CONDITIONS WILL REASONABLY ASSURE THE APPEARANCE OF ANY OF THESE DEFENDANTS AS REQUIRED.</u>

(1) <u>The Nature and Circumstances of the Offenses Committed</u>

If called to testify about the nature and circumstances of the offenses with which the defendants are charged, Kenneth Jett and Robert Webb, Special Agents of the Federal Bureau of Investigation ("FBI"), would testify to the following facts of this case:

On March 24, 2006, defendants Dorius and Pierre, and another person known as "Black," linked up to commit the kidnaping near the National Stadium in Port au Prince, Haiti.  Pierre and "Black" were armed with pistols.  The three walked down the street to the victim's house.  Dorius stood across the street from the victim's house, while the others walked back and forth in front of the residence.

At approximately 7:30 a.m., a car began to pull out of the driveway.  The victim's mother was taking her two daughters to school, and the victim was wearing a school uniform.  Pierre

4

and "Black" approached the car with pistols displayed, and removed the victim's mother and sister from the car. The mother implored the kidnapers to take her, and not her daughter. Dorius got into the driver's seat, Pierre into the front passenger seat, and "Black" into the back seat with the victim. The victim is ten years old and a United States citizen. The kidnapers drove off. Pierre suggested they to go to a house owned by a person named "Mackenzie," where they would hide the victim. En route, one of the kidnapers decided that the victim's school uniform might attract attention, so they decided to buy a t-shirt for her to wear over the uniform. They stopped to buy a t-shirt from a street vendor and placed it on the victim (there is some disagreement as to whether the purchased t-shirt was placed on the victim, or that one of the kidnapers placed his t-shirt on the victim and the kidnaper then donned the purchased t-shirt). They then drove to the location of "Mackenzie's" house, with Pierre providing directions on how to get there.

Pierre got out of the car and went up to Mackenzie's house. He returned and stated that "Mackenzie" was not there. They waited in the car for some time when a "friend" of "Mackenzie's," Gelin Lambert, arrived. Lambert spoke with Pierre and Dorius and then walked to the house. Pierre followed after Lambert, taking the victim with him, while Dorius and "Black" waited for him in the car.

At the house, the victim was taken to a bedroom. Two different men came to the room and asked the victim if she wanted anything to eat and the victim declined.

In the mean time, the three kidnapers had driven off in the car with the intent of disposing of it. During the time they were driving around in the car, they discussed the amount of ransom they would demand from the mother. The victim's mother's cell phone,

among other items, was still in the car. The kidnapers were expecting the mother to call them on her cell phone and that was when they would make their ransom demand. They were discussing a ransom demand in the $100,000 range.

While driving, the kidnapers noticed a Haitian National Police ("HNP") car following them. The HNP officers had been alerted to the kidnaping/car jacking, and had a description of the car. The kidnapers attempted to elude the HNP officers, but the HNP officers pursued them. The kidnapers abandoned their vehicle, and shots were fired. "Black" was shot and killed. The other two, Dorius and Pierre, were captured by the HNP.

After he was captured, Pierre led the HNP to where the victim was being held and the police rescued her.

Both defendants provided separate statements to Special Agents Jett and Webb admitting to their involvement in the kidnaping. Both were in Haitian custody when questioned by the FBI. The defendants were interviewed individually. At the beginning of the interview, the agents advised each defendant of his international "Miranda" rights in his native language and each defendant waived those rights orally and in writing. The Creole interpreter who assisted the agents has assisted with previous cases in Haiti. The only persons present during the interview were FBI agents and the interpreter, that is, there were no Haitian officials present. The agents provided water and food during the interviews. The agents stated that the defendants appeared to be alert and to understand their rights and the nature of the interview, and that any maladies/injuries of the defendants did not appear to affect their ability to voluntarily participate in the interview. The agents stated that the

defendants complained about their initial treatment by the HNP arresting officers, but had no complaints about their treatment while in jail.

Both defendants admitted to participating in the kidnaping as summarized in the factual proffer, with some variation on some of the details. Additionally, Pierre admitted to carrying a .380 caliber handgun loaded with five (5) round during the kidnaping and that he directed the kidnapers to "Mackenzie's house." Although no ransom demand was actually made, both defendants admitted to discussing the amount of the ransom demand during the conduct of the kidnaping.

(2) The Weight of the Evidence

As discussed above, the evidence in this case will be extraordinarily strong as to the guilt of the defendants on the hostage taking charge.

(3) The History and Characteristics of Defendants

It appears from the investigation of this case that the defendants are both nationals of Haiti and have no apparent ties to this community or even to the United States. See United States v. Townsend, 897 F.2d 989, 996 (9th Cir. 1990) (holding that defendant's failure to have any ties to the United States is a relevant factor). These defendants each present extraordinary risks of flight. If given the chance to flee, given the seriousness of the charges and the weight of the evidence, these defendants could easily seek to exit the United States. Should any of these defendants flee back to Haiti, it would be exceedingly difficult if not impossible to bring them back before the Court. As they know where the victim lives, they could pose a threat to her safety.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By:_____
JULIEANNE HIMELSTEIN
Assistant United States Attorney
National Security Section
D.C. Bar #
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-8203

_____
THOMAS P. SWANTON
Trial Attorney
Counterterrorism Section, Criminal Division
United States Department of Justice
D.C. Bar #462144
10th and Constitution Ave., N.W.
Washington, D.C. 20530
(202) 514-0636

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by US Mail and electronically on counsel for defendant, Dorius, Laura Quint, Esq., Federal Public Defender for the District of Columbia, 625 Indiana Avenue, N.W., Suite 550, Washington, D.C. 20004, Fax: 202-208-7515, and counsel for defendant Piere, Elita Amato, Esq., 1211 Connecticut Ave., NW, Suite 400 Washington, DC 20036 on this _____th day of June, 2006.

_____
JULIEANNE HIMELSTEIN
Assistant United States Attorney

8