IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Cr. No. 06-125 (RBW) |
| v.          ) | |
| ) | |
| CHARLES DORIUS          ) | |
| _____) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Charles Dorius, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Dorius respectfully asks the Court to sentence him to a period of incarceration of 81 months.

**BACKGROUND**

On May 12, 2006, a two-count indictment was filed against Mr. Dorius, charging him with Conspiracy to Commit Hostage Taking, in violation of 18 U.S.C. § 1203(a) (Count One) and Hostage Taking, in violation of 18 U.S.C. § 1203(a) (Count Two). On July 27, 2006, Mr. Dorius pled guilty to Count Two in accordance with a written plea agreement.

**DISCUSSION**

**I.    THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, _ U.S. __, 2005 WL

1

50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.).  While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

II.     UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. DORIUS SHOULD RECEIVE A SENTENCE OF 81 MONTHS

   A.     Statutory Provisions

Pursuant to the applicable statutes, the maximum term of imprisonment is life for the offense charged in Count Two of the Indictment.

   B.     Advisory Sentencing Guidelines

       (I).     *Applicable Guideline Range*

The Probation Office, consulting the 2005 edition of the Guidelines Manual, has concluded that, with respect to the offense in Count Two, the Total Offense Level is 29 and Mr. Dorius' criminal history category is I, resulting in an advisory Guideline range of 87-108 months.

*(II).    Mr. Dorius' Status as a "Deportable Alien" Warrants a Downward Departure*

The D.C. Circuit has specifically held that a downward departure may be appropriate if a defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his confinement. *United States v. Smith,* 27 F.3d 649 (D.C. Cir. 1994).

Pursuant to 18 U.S.C. § 3624(c), prisoners in federal facilities have the right to participate in pre-release programs aimed at facilitating their re-entry into the community. In *Lartey v. Dep't of Justice,* 790 F. Supp. 130 (W.D.LA. 1992), however, the court determined that the right to participate in such programs was unavailable to deportable aliens and applied only to prisoners being released into communities within the United States.

Because present law requires that a non-citizen convicted of a federal offense and sentenced to imprisonment must serve the entire sentence (minus statutory good time and time served) and precludes that individual from participating in certain programs while confined, it follows that Mr. Dorius faces more severe treatment in this case than he otherwise would by the Bureau of Prisons. In accordance with the Circuit's holding in *Smith,* therefore, Mr. Dorius qualifies for a downward departure.

C. Other Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should

consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

---

*I. Nature of the Offense*

Nothing can justify the offense committed by Mr. Dorius in this case. While he did not fully realize the effect or consequences of his actions, he participated in conduct that endangered the most innocent of victims–a ten-year-old girl. Though the political and economic conditions in Haiti do not excuse the commission of *any* type of crime, Mr. Dorius does ask the Court to take into consideration the climate prevailing in Haiti in judging his actions. Mr. Dorius' conduct reflected a perception of hopelessness and helplessness when it came to supporting his family in light of decreasing economic possibilities.

Haiti is the poorest country in the Western Hemisphere (See Haiti: An Economic Basket Case at http://news.bbc.co.uk/2/hi/business/3522155.stm) and, since the abrupt departure of

President Aristide in 2005, the political, security and socio-economic situation remains in crisis (International Crisis Group). Violence is extremely high and the weak national government is further hindered by human rights abuses at the hands of the Haitian National Police (HNP) and political polarization. The majority of Haitian citizens live in poverty without jobs, adequate food, or health care. In the last two years, frustration among Haitians has been growing. (International Crisis Group).

It is against this backdrop that Mr. Dorius–as well as several other Haitians currently awaiting sentencing in this Court–committed the acts they did, spurred on by economic desperation. In a country plagued by poverty and beset by lawlessness and a corrupt system of law enforcement, Mr. Dorius engaged in the offense at issue without fully internalizing the effects or consequences.

*II. Characteristics of the Defendant*

As set forth in the Presentence Investigation Report (hereinafter "PSR"), Mr. Dorius has experienced hardship from very early on in life. Following his parents' death when he was still a child, Mr. Dorius was thrown into an adult world before fully experiencing a childhood. Living in an orphanage between the ages of 6 and 18, Mr. Dorius was subjected to harsh discipline and lacked the affection, guidance and support of a loving family. He worked to earn wages and renounced his education when it became unaffordable. Despite his skills as a mechanic, truck driver and tailor, for the two years leading up to his arrest, Mr. Dorius was unable to find a stable job that would provide a reliable source of income. Even when employed as an ambulance driver, his wages alone did not provide him with a sustainable living.

Mr. Dorius has shown himself willing to work and determined to provide for his girlfriend and young daughter. He became frustrated and, feeling helpless and desperate, engaged in the inexcusable acts that led to his arrest.

While those acts cannot be undone or excused, Mr. Dorius agreed to plea guilty in a timely fashion and spoke with prosecutors and law enforcement authorities at an early stage about his role in the case. During the past eight months at the D.C. Jail, Mr. Dorius has certainly had a wake up call and come to terms with the consequences of his actions. Being in a faraway country, unable to communicate with other inmates or receive visits from loved ones, Mr. Dorius has had ample time to reflect. At this point, he wants nothing more than to move on with his life. He knows he must pay for his crime, but he is eager to return to his girlfriend and child.

### III.  *Needs of the Community and Public*

For the reasons stated in Section II, a sentence of incarceration of 81 months would serve to punish Mr. Dorius, while taking into account the specific characteristics of his confinement. Mr. Dorius not only will not benefit from certain programs available to other inmates, but will likely serve four-to-six weeks following his "release" in immigration-related detention. Since he will not be "re-entering" the community, sentencing him to a sentence longer than 81 months would do nothing to serve the public.

### **CONCLUSION**

For the reasons set forth above, as well as for any others that it may deem fair and reasonable, Mr. Dorius asks the Court to sentence him to a period of 81 months of incarceration.

Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in 18 U.S.C. § 3553.

        Respectfully submitted,

        A.J. Kramer
        Federal Public Defender

        _____
        Lara G. Quint
        Assistant Federal Public Defender
        625 Indiana Avenue, N.W.
        Washington, D.C. 20004
        (202) 208-7500 ex.126